That the said telephone company was organized for the purpose of constructing, maintaining and operating a line or lines of telephone within the said city of Middletown, in Butler county, Ohio, with its office and principal place of business at Dayton, in Montgomery county, Ohio, by the use of the streets, alleys and public ways, or through public grounds within the limits of the said city of Middletown, Ohio.
That on February 29, 1904, it made application to the city of Middletown, asking that an agreement be entered into between the city of Middletown and the said telephone company *456 for the mode of use within the limits of said city of Middle-town, of the streets, alleys, etc., for telephone purposes. And that said application was accompanied with a form of a proposed ordinance, which would have been acceptable to said plaintiff company.
The petition further avers that the city of Middletown, on 'June 10, 1904, passed an ordinance granting to said plaintiff company a franchise authorizing it to construct and operate a telephone system within said city of Middletown, Ohio; and that on June 13, 1904, plaintiff declined and refused to aeeept the same, and so notified the said city of Middletown, Ohio.
These are the material averments of the petition, to which on July 11, 1904, the city of Middletown filed its answer, denying the legal existence of the plaintiff company, and its right to prosecute this action. The issue has heretofore been decided in favor of the plaintiff company, after a full hearing of the evidence on that point.
The answer admits the inability of the plaintiff company and the defendant city to agree as to the mode and manner in which such telephone system should be constructed. And the court now comes to a consideration of the real point of difference between the parties, namely, the manner of construction of said telephone system. Section 3461 upon which plaintiff relies for its authority to bring this action reads as follows:
“Section 3461. When any lands authorized to be appropriated to the use of a company are subject to the easement of a street, alley, public way or other public use, within the limits of any city or village, the mode of use shall be such as shall be agreed upon between the municipal authorities of the city or village and the company; and if they can not agree, or the municipal authorities unreasonably delay to enter into any agreement, the probate court of the county, in a proceeding instituted for the purpose, shall direct in what mode such telegraph line shall be constructed along such street, alley or public way, so as not to incommode the public in the use of the same; but nothing in this section shall be so construed as to authorize any municipal corporation to demand or receive any compensation for the use of a street, alley or public way, beyond what may be necessary to restore the pavement to its former state of usefulness. ’ ’
*457 No legal question would now remain for consideration in this ease, were it not for the fact that since the decision on the preliminary questions herein and since this ease was submitted on its merits, the Common Pleas Court of Hamilton County, in the ease of The City of Cincinnati v. The Queen City Telephone Company, on error from the probate court, has overruled that court and rendered an opinion, which, coming as it does from a learned judge of a higher court, must be considered as affecting the jurisdictional questions involved here (see 2 N. P. — N. S., p. 349).
The second syllabus reads as follows:
“A probate court has no power under either Section 3461 or any other section of the statutes to grant to a telephone company the right to put its wires underground.”
In this ease, so far as conduits are concerned, the only difference between the parties is the entent to which the underground conduits shall be used. The city, through its officers, contends that a certain portion of its territory shall be exempt from poles and overhead wires; while the company, on the other hand, argues that a much smaller conduit district shall be established. It is therefore agreed that there shall be some conduits, but upon the extent of same and upon some minor questions, the city and telephone company can not agree. If the law is correctly stated by the learned judge in the syllabus above quoted, the court in this ease, having had its jurisdiction invoked for the purpose of settling the dispute as to the extent of underground construction, must say that there will be no underground work, and that all the court can do is to permit an overhead construction, which is entirely foreign to the ideas and desires of either party; and that then the company can put as much of the construction underground as it desired. For, the holding of the court in the Cincinnati case is, that no authority can be granted by a city or probate court to a company to put wires underground except to a company owning and operating an exchange in said city. It will be seen that such a view of the law in this case leads to incongruity and absurdity, *458 and, under the rules of construction of statutes, should not be .adopted unless the language of the statute is clearly in support of it, and will admit of no other construction or interpretation— which is the view taken by the court in the case under consideration.
By a process of reasoning, which this court can not adopt as sound, and which does not lead it to the conclusion reached by him, the learned judge finds that the language of the statute is clearly and positively in support of the second syllabus above quoted; and that no authority is given either to a city or probate court to grant to a telephone company not in operation in .such city the right to lay wires underground.
This court is of the opinion that Section 3461, above referred .to, not only gives it jurisdiction over the subject-matter in this case, but also confers upon the court authority to settle the issue involved, and direct a mode in which the telephone lines can be “erected,” “laid,” “constructed,” or suspended, or in any other manner placed along the streets and alleys of the city of Middletown.
■ The court is further of the opinion that said Section 3461 alone embraces the entire law of this case without reference to, dependence upon, or connection with any other section. The language of the section is so clear as to make any exposition difficult, and to the court’s mind unnecessary. In this connection let me again quote a portion of said section:
. “When any lands authorized to be appropriated to the use of .a company are subject to the easement of a street, alley, public way or other public use, within the limits of any city or village, the mode of use shall be such as shall be agreed upon between the municipal authorities of the city or village and the company; and if they can not agree, or the municipal authorities unreasonably delay to enter into any agreement, the probate court of the county, in a proceeding instituted for the purpose, shall direct in what made such telegraph line shall be constructed along such street, alley or public way, so as not to incommode the public in the use of the same. ’ ’
This section clearly means, if it means anything, that the city and the company may agree upon any mode or manner of con *459 struction, including conduits, of course; and it certainly must also mean what it explicitly says, namely, that if they can not agree, the probate court, in a proceeding instituted for the purpose, shall direct in what manner or mode said lines shall be constructed. What can be clearer than that the words “the mode of use” and “in what mode,” as used in this section, comprehend conduits as well as any other method of construction. The language is, that the court shall order the same constructed, “so as not to incommode the public in the use of the same. ’ ’
Now, it is in evidence, from the testimony of telephone experts, that conduits are a modern device; in fact, the most approved and up-to-date method of conducting wires along streets, especially from the standpoint of the public. No other manner of putting wires along streets and alleys can meet so little rational objection on the ground of incommoding the public, as the conduit system. As the statutes direct that the court shall order the work done, “so as not to incommode the public,” it makes it more unreasonable and illogical to exclude the “conduit” method, which is the one least burdensome to the public and to the public way. In other words, the “conduit” system is considered in this day the best, mainly because it reduces the burden on the street to a minimum, and, consequently, incommodes the public but little.
The learned judge in the Queen City case gives as another reason for holding that the court can not construe the statutes to embrace conduits, that the Legislature uses the word “construct,” “erect,” etc. This court has found that Section 3461 alone governs this ease, and in it the word “construct” only is used. It is said that conduits can not be contemplated where the‘word “constructed” is used because it is improper, and because (quoting from the opinion) “conduits” can not be constructed (page 352). To this the court can not subscribe.
During the hearing of the testimony in this case, it was quite a common thing for the witnesses, experienced in telephone construction, to speak about “constructing conduits” and “underground construction. ’ ’ Such terms were frequently used by the witnesses in this ease, and the court is satisfied that such use is *460 justified and in accord with common usage and the literal meaning of the words employed. Webster’s dictionary defines the word “construct” as follows: “To put together the constituent parts of something in their proper place and order.” As understood by the court, this is what is done when conduits are put in. Thus, we see, that in such eminent authority as Webster, and in accordance with usage and custom, it is right and proper to say “construct conduits.”
We, therefore, reach the conclusion that this court has the power to authorize the laying of conduits in a case of this kind, and that it has the authority therefore to prescribe the manner and method in which the plaintiff company may construct its system in the city of Middletown, whether by use of conduits or otherwise.
We believe that this conclusion is irresistible, and in accordance with the weight of authority (see Cleveland Telephone Company v. Chagrin Falls, 1 N. P. — N. S., 534; Edison Electric Co. v. Cincinnati, 3 Goebel’s Rep., 304).
Coming now therefore to direct the mode of use, the court directs that the plaintiff shall use the streets, alleys and public ways of the said city of Middletown for its telephone lines and system, as follows:
First. Said, The Middletown Home Telephone Company, is hereby authorized and empowered to construct, operate and maintain, within the city of Middletown, a telephone exchange, poles, wires, conduits and all necessary appliances and devices for the successful operation and maintenance of a telephone system, and for that purpose the right is hereby granted to said company to dig trenches and lay conduits therein, and to erect poles and supports upon which to place wires and cables, along and upon the streets, alleys, public grounds and public ways in said city and to do all things necessary to be done to enable said company to conduct, maintain and operate a telephone exchange and system in said city. Said grant and privilege is given upon the conditions following, to-wit:
1. On Main street, from First street to Ninth street, and on Broad street, from Third street to Yankee road, all lines of wires of said company shall be conducted along said streets and portions thereof by means of underground conduits or subways, and no poles will he permitted or allowed thereon, except as follows:
(a) On Main street, between Fifth street and Ninth street, such poles will be permitted as may be necessary for distribution purposes; that is, such poles as may be necessary for the purpose of connecting said main wires in conduits with the patrons or subscribers of said *461 company as the same may be located in buildings along said streets; and provided, further, that wherever possible said distribution poles shall be placed in alleys, or arrangements made to use poles already in use, if possible, so as to incommode the public as little as possible in the erection of said poles. All distribution poles permitted above shall be, when erected, not less than thirty-five feet high.
(5) No poles for any purpose whatever shall be erected 'on Third street, between the C., C., C. & St. L. Ry. and the Great Miami River, except where said Third street crosses the Miami and Erie canal one pole with necessary guys or stays shall be placed at the northwest corner of said intersection of said canal and said Third street, for the purpose of 'carrying the wires across said water-way. No conduits shall be constructed or excavation made in the construction and maintenance of said telephone system on Third street between the points aforesaid, except as above provided, and with the further exception that conduits may be constructed and maintained under the surface of said street between said the Miami &' Erie canal and the Great Miami river.
2. On all other portions of said city’s streets, alleys and other public grounds and public ways other than those mentioned, poles may be erected and wires and cables strung for the purpose of said telephone system, subject to existing rights of abutting property owners.
3. All conduits shall be. composed of the usual material employed for said work, and shall be laid under the surface of the streets, and the manholes shall be composed of such material, and the covers for said manholes shall be of such material as the Board of Public Service of the City of Middletown may reasonably direct.
4. The digging of trenches, filling the same, replacing the surface of the street or sidewalk, setting the poles, posts and other fixtures and appliances, shall be done under the dirction of the city civil engineer of said city, or other person designated by the governing body of said city of Middletown, and shall be done so as to not interfere with the flow of water in any streets or gutters, and so as to not interfere unnecessarily or unreasonably with the passing of persons, teams or vehicles upon the public ways of said city, and so as to not injure or interfere with the conduits, sewers, gas or water pipes, or other public utilities that may be in said streets, alleys, lanes and public grounds in said city at the time said work is done.
5. When any excavation shall be made in any street, alley or other public way, the surface of the same shall be restored in as good condition as the same was before any excavation was made therein. On all graveled streets, the gravel for the top surface shall be new and clean, thoroughly packed and rammed so as to make the surface of the street as good and safe and free from holes or obstructions as the same was prior to making any excavation therein. On all streets permanently paved with asphalt, brick or other permanent material the pavement shall be restored under the supervision and to the satisfaction of the board of public service, and under such reasonable rules and regulations as the said board shall adopt, or have adopted relating to the making of excavations into and restoring the earth and pavement on paved streets. All such restora *462 tion. of streets shall be done promptly and without delay by competent person’s.
6. If said company, its successors or assigns, shall fail or neglect to restore the surface of any’ street in a good and workmanlike manner to the satisfaction of the board of public service within ten (10) days after being notified by the board of public service ’so to do notice of which shall be sufficient if left at the office or exchange of said telephone system, the board of public service may cause such work to be done and the cost thereof shall be charged against said telephone company, its successors or. assigns, and paid by said company into the city treasury.
7. The poles shall be straight, smoothly dressed' and the tops thereof not less than thirty • feet above the surface of the ground when erected. The said poles shall be painted and kept painted to the satisfaction of the board of public service. They shall be erected as nearly as possible at the curb line of the street, just inside of the curb thereof, and so as not to interfere with the ordinary use of any street and alley, and so as not to interfere with the ingress or egress of any private property, fronting or abutting on said street 'or alley, and shall be so erected as not to injure or destroy any trees standing or growing in the line of any street or alley.
8. The pavement or sidewalk and all curbs cut into or destroyed for the purpose of erecting any pole, shall be restored to as good condition as the same was prior to cutting into same, promptly and without delay, and to the full and complete satisfaction of the board of public service; and if said company fails to do so within ten days after making such excavation, the board of public service may immediately cause the same to be done at the expense of said company.
9. During the work of constructing and installing said telephone system of said The Middletown Home Telephone Company in the city of Middletown, said board may employ an inspector for each gang of workmen employed in constructing said telephone system, and said The Middletown Home Telephone Company shall pay the costs and expenses of such inspector or inspectors; and on the first day of each month shall pay into the treasury an amount sufficient to pay the wages or compensation of said inspectors, at the rate not exceeding $3 per day for each inspector so employed. The services of the city civil engineer of said city of Middletown, having supervision over the construction of said telephone system, or in case said city has no such officer, the services of such other competent engineer as said city may select from the time said work of construction is begun until the completion thereof, shall be paid for by said The Middletown Home Telephone Company in like manner.
10. The said company, its successors or assigns, shall before entering upon its use and occupancy of the streets, alleys and public ways, and before excavating any street, alley or public way, deposit with the treasurer of the city of Middletown the sum of two thousand dollars ($2,000), and shall during the time said plant and system is being constructed, maintain and, deposit to the full amount of two thousand dollars ($2,000) to guarantee the faithful performance *463 on the part of said company, of all provisions of this ordinance relating to the restoration of the surface of the streets, alleys and public ways of the city, and the payment of all costs and expenses of restoring the surface of streets, alleys or public ways; and the payment of all costs and expenses of engineer and inspectors employed to inspect said construction. After said system has been fully completed and in operation, and all streets have been fully restored, and all sidewalks replaced to the satisfaction of the board of public service as hereinbefore stated, the said company may secure and have returned to it said deposit so made, less any sum that may have been paid out by said city for work done or materials furnished for which said company should have paid under the provisions hereof. In addition to the deposit of two thousand dollars ($2,000) in money above provided for, said telephone company shall before entering upon the construction of its system, give bond or undertaking to the city of Middletown in the sum of five thousand dollars ($5,000), with sureties to the satisfaction of the proper authorities of said city, conditioned that the said company shall faithfully and promptly comply with each and every provision of this decree on its part to be kept and performed, and conditioned further that the said company shall at all times save the city of Middletown free and harmless from any claim or claims for damages on account 'of injury to person or property arising out of the construction, operation or maintenance of said telephone system. Said undertaking to be renewed from time to time as said city may require and to continue in force for as long as said telephone system exists.
11. The rights and privileges herein granted shall be in The Middletown Home Telephone Company, its successors or assigns, and the obligations shall extend to and be binding upon its successors and assigns, and the authority and control, supervision and power hereby given to the board of public service, city council or any other officer of the city of Middletown, shall extend likewise to any like board or officer who may succeed in the future by legislative enactment, or otherwise, to the rights, powers and prerogative of any board or officer named herein.
12. All the rights of said telephone company under this ordinance are to be held subject to the police regulations that are made or may be made by the city of Middletown, and said telephone system shall be installed, erected, maintained and operated strictly in conformity to all the laws of the state of Ohio, and to all the ordinances of said city relating thereto, which are- now in force, or may hereafter be passed; but the same shall not unreasonably impair or be destructive of the rights herein granted.
13. Said telephone company shall furnish the patrons in Middle-town, Ohio, copper metallic circuits in all cases to connect its subscribers in Middletown with its exchange or central office in said city.
14. If at any time in the future, and during the continuance of the operation of the said telephone system, an effort be made to remove all telephone poles and wires from any street, alley, public way or other public grounds of said city, and the consent of any other company or companies operating a telephone system in said city is obtained, said The Middletown Home Telephone Company, *464 its successors or assigns, shall not have the power to hinder or defeat said purpose; but shall unite with such other company or companies in said removal of poles and wires, and replacing same in conduits or subways or in any other approved manner, upon such terms and conditions as said companies may agree upon; or in case of their failure to agree, then upon such terms and conditions as may be prescribed by the board of public service, or other governing body of said city of Middletown.
Bosler & Emanuel, for plaintiff.
Benj. Marwitz, Solicitor for City of Middletown, and Walter A. Marian, for City of Middletown.
15. It is further ordered, adjudged and decreed, the parties hereto consenting, that the rights herein granted shall continue from the filing of this decree for and during the period of twenty-five (25) years, and in case legal proceedings are prosecuted against the plaintiff so as to interrupt the work of construction of its telephone system, the time during which such work of construction is interrupted, shall not be included in said twenty-five (25) years.
16. It is further ordered, adjudged and decreed, the parties hereto consenting, that the underground construction and setting of poles in the streets, alleys and other public ways of the city of Middle-town, Ohio, shall be commenced not later than April 1, 1905, and the same shall be lully completed within eight - (8) months thereafter, unless prevented by litigation or other unavoidable casualties, and in that case such delay shall be allowed as an extension of the limits of time herein stated.
17. Jurisdiction of this matter shall be retained by this court until such system is in operation, and this decree is subject to further modification by the court not destructive of the rights herein granted.